**Manuel DAVIS and Manuelita Foster, Appellants,**

v.

**Bennie L. CARRIKER, Appellee.**

**No. 8609.**

Court of Civil Appeals of Texas, Amarillo.

April 13, 1976.

Rehearing Denied April 13, 1976.

**248**

Key, Carr, Evans & Fouts (Donald M. Hunt), Lubbock, for appellants.

Brock, Waters & Galey (Ralph Brock), Lubbock, for appellee.

## ON MOTION FOR REHEARING

ELLIS, Chief Justice.

Our opinion issued on March 15, 1976, is withdrawn, and the following opinion, issued subsequent to appellee's motion for rehearing, is substituted therefor:

Manuel Davis and his daughter, Manuelita Foster, defendants-appellants, have brought this appeal from a judgment granting a permanent injunction in favor of plaintiff-appellee, Bennie L. Carriker, preventing the defendants from interfering in any manner with plaintiff's ingress and egress to Section 71, Block G, W. and N. W. R. R. Co. Survey in Kent County, Texas, a portion of the Carriker ranch, across a certain triangularly shaped tract of land in the northeast corner of Section 70. Record title to Section 70 (which adjoins section 71 on the west) is in defendant Davis, and Carriker claims he has acquired title to or an easement across the triangular tract. In response to plaintiff's petition, defendants answered and Davis counterclaimed for a declaratory judgment that plaintiff has no easement across the triangle and for an injunction prohibiting plaintiff and anyone in privity with him from "entering upon or going across the Defendant's land."

Trial was to the court without a jury. Judgment was rendered for plaintiff against both defendants and against defendant Davis on his counterclaim. The

trial court concluded, among other matters, that: plaintiff acquired title to the triangular strip by grant, or alternatively, by virtue of the ten year statute of limitation; and plaintiff has an easement by prescription, an express easement, an implied easement, a way of necessity, and a public easement over the triangular strip to section 71. The judgment as entered is reversed and rendered in part, and affirmed in part.

This case involves the Carriker ranch and the Davis ranch. According to plats shown in the record, four sections of land out of the two ranches lie about a common corner, section 86 to the northeast, section 71 to the southeast, section 70 to the southwest, and section 87 to the northwest. At the time this suit was filed gravel was being hauled from the pits located in section 71 (a part of the Carriker ranch) which has been owned wholly by appellee since he purchased the outstanding interests therein from other members of the Carriker family in 1971. Section 87 (recently sold) was also a part of the Carriker ranch which, along with section 71 and other lands, was purchased by the Carrikers in 1924.

Record ownership of section 70 is in Manuel Davis and section 86 is owned in trust for his daughter, Manuelita Foster. Davis acquired section 70 in 1963 from his father who was the grantee of Belle Sims who patented the land in 1916. The Davis home, in which Manuel, his wife, and his mother reside, has been located between 50 and 100 yards from the triangle, near the northeast corner of section 70 (the common corner) since 1935. It is the triangularly shaped tract of land which lies between the Davis home and the common corner which is the subject of this suit.

Appellant Davis here asserts that he owns all of section 70 up to the above mentioned common corner. Carriker claims ownership of a prescriptive right, easement or other right, title or interest in the triangular tract which he contends is bounded on the east by the fence dividing sections 70 and 71, on the north by the fence dividing sections 70 and 87, and on the southwest by a fence cutting across the northeast corner of section 70. Neither Carriker nor Davis knew when or by whom the fence line across the northeast corner of section 70 was first established; this fence was there when the Carrikers purchased their land. The triangular area is a "rocky" corner, and it was difficult to build and maintain a good fence line. On at least one occasion Davis, on his own initiative and at his own expense, moved the angular fence line southward. Although the exact measurement and description of the triangular tract are in dispute, the approximate dimensions of the triangle are: 80 feet on the east side, 80 feet on the north side, and 130 feet on the southwest side. This corner of land is not precisely in the shape of a triangle because the fence making the southwest side turns substantially due north a short distance before it intersects the east-west fence between sections 70 and 87. However, the tract shall be herein referred to as a triangle.

The trucks hauling gravel from the Carriker pit in section 71 traveled northwest across the triangle to section 87, then north on a road along the east side of section 87, and continued north along the east side of the next section (section 100) to U.S. Highway 380.

Appellants Davis and Foster assert nine points of error primarily challenging the evidential support for various findings of fact and conclusions of law made by the trial court. In point of error number 5 appellant Manuelita Foster contends that the judgment rendered against her is without support in the evidence. Although Manuelita Foster was named as a defendant, no complaint is made of her in the Plaintiff's Amended Original Petition. She and Davis answered by general denial. Only Davis sought relief against Carriker by counterclaim; Manuelita did not join in the counterclaim.

■ It does not appear that Manuelita claims ownership of any part of sections 70, 71 or 87, nor does it appear that her ownership of section 86 or any part thereof is in question. Neither is there any evidence

that Manuelita acted to restrict the use of the triangle.

We find nothing in the record to support the rendering of judgment against appellant Manuelita Foster. Accordingly, point of error number 5 is sustained.

Point of error number 4 will next be considered because it involves matters germane to the consideration and determination of other points raised in this appeal. Point 4, when its entire scope is considered, clearly presents a challenge to the legal and factual sufficiency of the evidence to support the findings and conclusions of the trial court that Carriker had acquired rights in the triangle by prescription or adverse possession. Carriker contends that he or those through whom he claims acquired title to the triangle by limitation (or acquired a prescriptive easement therein), so as to make it a part of section 87 and not a part of section 70. Although Carriker did not plead a claim of limitation title by adverse possession, he pleaded easement by prescription. The trial court found both easement by prescription and fee title by adverse possession.

■ To establish an easement by prescription the claimant must show that the use of the alleged servient estate was open, notorious, hostile, adverse, uninterrupted, exclusive and continuous for a period of more than ten years. *Dailey v. Alarid*, 486 S.W.2d 620 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.). It is clearly pointed out in *Dailey* that a failure to prove any of these elements is fatal to a prescriptive claim.

Carriker contends that Manuel Davis judicially admitted that he claimed no more land than was fenced in. In this connection, Carriker insists that Davis claimed only that part of section 70 which was bounded by the fence line and the court so found. He urges, therefore, that Davis is precluded from claiming all of section 70 to the common corner previously mentioned, particularly the triangular tract in the northeast portion thereof.

During the trial a survey plat was introduced into evidence which showed that, west of the triangle, the east-west line separating sections 87 and 70 was 24.7 feet north of the original section line. Also, east of the triangle, the east-west line separating sections 86 and 71, according to the survey plat, indicated that such line encroached upon or dipped down to some extent into section 71. During his examination concerning these encroachments, Davis stated that he claimed to the fence line. Later in the testimony, however, he stated that he claimed all of section 70. Davis indicated that he had formerly been confused about positioning and reading the plat map, and it does not appear that at any time during this testimony Davis was testifying concerning any disclaimer of the triangle. We find no clear factual admission of non-ownership of the triangle.

■ When viewed in context, and in consideration of the circumstances, it is our opinion that the statements made by Davis are not sufficiently deliberate, clear and unequivocal to meet the standards required for a judicial admission. See *Griffin v. Superior Insurance Company*, 161 Tex. 195, 338 S.W.2d 415 (1960); *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd). Additionally, it is well recognized that adverse possession must be established by the strength of Carriker's title and not by any weakness in Davis' claim of title. *Reinhardt v. North*, 507 S.W.2d 589 (Tex. Civ.App.—Waco 1974, writ ref'd n. r. e.).

■ The evidence indicates that the use of the triangle by the Carrikers continued more or less uninterrupted since 1924. However, mere use, no matter how long continued will not satisfy the requisites of adverse possession. *Dailey v. Alarid, supra.* The use must be adverse. *Gilbert v. Green*, 150 Tex. 521, 242 S.W.2d 879 (1951). The hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. *Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622 (1950). It is well established that the possession by the limitation claimant must wholly exclude the record owner. See *W.*

*T. Carter & Bro. v. Holmes,* 131 Tex. 365, 113 S.W.2d 1225 (1938); *Southwestern Lumber Co. of New Jersey v. Allison,* 276 S.W. 418 (Tex.Comm'n App.1925, holding approved). Such exclusion of the Davises by the Carrikers has not been established during any asserted prescriptive period. The failure to prove exclusive use is fatal to the establishment of title by adverse possession. *Dailey v. Alarid,* supra; also see 24 Baylor L.Rev. 428 (1972).

■ The record reveals the absence of significant acts or conduct by the Carrikers demonstrating their asserted adverse claim to the triangle. Only Davis and his predecessors in title paid the taxes on section 70. There was no evidence that Carriker or his predecessors ever paid taxes on any part of the land which he claims by adverse possession. Although payment of taxes is not necessary to support ten year limitation title, failure to do so after the expiration of that period is significant evidence that no adverse claim is being made. *Warren v. Fredericks,* 83 Tex. 380, 18 S.W. 750 (1892). Carriker contends that the description of section 87 in the deed evidencing the conveyance of section 71 to him from other members of the Carriker family included the triangular strip because the strip became a part of section 87 by adverse possession. There is no metes and bounds description of section 87 or any other evidence to indicate the shape or area of section 87 as including the triangular strip. It does not appear from the evidence that the triangular strip has ever been described in any instrument other than as a part of section 70. Further, it is noted that Davis granted an easement to the State of Texas in 1963 to allow gravel trucks to cross the triangle between the gravel pit in section 71 and a highway construction site to the north. Additionally, the only evidence as to claim of right was with respect to the subjective intent of the Carrikers, an intent not communicated to the Davises and not manifested by conduct of the Carrikers of such a nature as to put the Davises upon constructive notice that the Carrikers claimed Davis' land as their own.

■ The Carrikers had the burden of proving, without the benefit of any inferences, their adverse possession under the ten year statute of limitations. *Champion Paper & Fibre Company v. Wooding,* 321 S.W.2d 127, 134 (Tex.Civ.App.—Waco 1959, writ ref'd n. r. e.). The applicable rule is stated in *Stringer v. Johnson,* 222 S.W. 267, 274 (Tex.Civ.App.—Beaumont 1920, no writ) as follows:

"One asserting title to land by limitation has the burden of proving every fact necessary to give such title, and inferences are never indulged in favor of a limitation claimant. *Dunn v. Taylor,* 102 Tex. 80, 113 S.W. 265."

■ From a review of the record in the light most favorable to the trial court's findings as to those matters determinative of Carriker's rights in and to the triangle, it is our opinion that because of the absence of evidence of probative force establishing all of the elements of adverse possession such findings cannot be permitted to stand. Accordingly, Davis' contention in his fourth point to the extent that he challenges the legal sufficiency of the evidence to support Carriker's claim of establishment of fee title or prescriptive easement in the triangle, is sustained.

■ By the first point of error, it is contended there is no evidence to support the finding and conclusion of the trial court that Carriker had an express easement across the triangle. An easement is an interest in land, subject to the Statute of Frauds and the Statute of Conveyances and generally must be conveyed in writing. *Anderson v. Tall Timbers Corporation,* 378 S.W.2d 16 (Tex.1964). The record does not contain any evidence of a writing granting an easement across section 70. Carriker replies that the deed of 1971 conveying section 71 to him contained a grant of an easement from U. S. Highway 380 across the east side of sections 100 and 87 to section 71. He argues that section 87 as described included the triangle of land. Carriker relies wholly upon the theory he or his predecessors in title acquired title to the triangle by adverse possession and that it

thus became a part of section 87. Implicit in the trial court's finding of express easement is a finding of title to the triangle in the Carrikers because the trial court also found that Carriker had no written easement on any part of section 70. In view of the foregoing discussion relevant to our holding that the evidence was legally insufficient to support the trial court's findings of title by adverse possession and easement by prescription, we sustain point of error number 1.

Point of error number 2 attacks the findings and conclusions by the trial court that the triangle was burdened with an implied easement or way of necessity. It is contended that such findings and conclusions are unsupported by the evidence, chiefly because there is no evidence of unity of ownership. Among the elements that must be established to create an easement by implication is unity of ownership of the quasi-dominant and quasi-servient estates. *Othen v. Rosier,* supra. Unity of ownership is also necessary to the establishment of a way of necessity. The dominant and servient estates must at some time have been under common ownership. *Estate of Waggoner v. Gleghorn,* 378 S.W.2d 47 (Tex. 1964). In reply Carriker contends that because the triangular strip was part of the Carriker ranch "from the time they acquired it," when he purchased section 71 he received a way of necessity over the strip which would then have been a part of section 87. Thus, Carriker relies again on title by adverse possession or easement by prescription as the basis for his contention that he has an implied easement or way of necessity. The trial court found that there was no unity of ownership between sections 70 and 71 or between sections 86 and 71. Therefore, in view of our discussion under point of error number 4 with regard to Carriker's failure to establish title to the triangle by adverse possession or prescriptive easement, we sustain point of error number 2.

In point of error number 3 a challenge is made to the finding and conclusion by the trial court that the triangle was impliedly dedicated as a part of a public road. It is contended that the evidence is conclusive that if the road was ever public, the public stands to lose no rights if the road should be closed. To establish that a dedication to the public has been made it must be established that there was an act express or implied throwing open to the public, sufficient to establish a dedication, that the public accepted the dedication by general and customary use, that the road remains devoted to public use, and that the public will lose valuable rights if the road is closed. *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878 (1960).

It is our opinion that the findings of fact which are the basis for the conclusion of law that there had been an implied dedication of the road to the public are not supported by the evidence. The evidence does not disclose that any "old road" mentioned was subject to general and customary use by the public. Even if the road crossing the triangle was once part of a road leading southward to a certain dugout town and cemetery, the town had been abandoned since before the 1920's, and the evidence showed that the road leading directly from the abandoned town is no more than two ruts, barely visible through the grass in some places and must be traveled on foot in some places. Thus, even if the road were once public, it has not retained its public character. The old road cutting across section 87 had been fenced off as it enters that section from the north. Carriker testified that people who came to explore the old dugout town located in section 71 crossed the Carriker ranch because he did not mind their coming across his land. He maintains a gate across the road which leads from the gravel pits to the triangle on the west fence line of section 71.

There is no evidence of any other use of the road than the use made by the gravel trucks, by the Carrikers and Davises themselves, and by occasional visitors to the dugouts. Carriker testified that he did not know whether the road to the dugouts was the same road that served the cemetery.

█ We find no more than a scintilla of evidence to support the findings by the trial court of the existence of an implied dedication of the road to the public. In law a scintilla of evidence is no evidence. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898). Appellants' third point of error is sustained.

█ By point of error number 6 it is asserted that, because of the insufficiency of evidential support, the trial court erred in finding that no health hazard or nuisance exists because of dust created by the gravel trucks traveling across the triangular tract, and in concluding that Carriker should not be enjoined. Points of error numbers 7–9 are alternative points relating to the adequacy of the description of the easement area in the event it is established that Carriker has an easement or other right to cross the triangular tract. Thus, points 6–9, inclusive, are predicated upon the assumption that Carriker has established his asserted rights to cross the triangular tract. In view of our holding that he has not established his claim of title, easement, and prescriptive or other rights across the triangular tract, we do not reach points 6–9.

For the reasons above stated we have determined and declare that Carriker has no easement across the triangular tract. Accordingly, we reverse that portion of the trial court's judgment declaring Carriker's rights of ingress and egress across the described triangular tract, dissolve the injunction heretofore granted in Carriker's favor, and render judgment that he take nothing by his suit. Davis has not brought before us an appropriate point of error attacking that part of the judgment effecting a denial of his plea for injunctive relief; therefore, that portion of the judgment is affirmed.

We have considered the various matters raised in appellee's motion for rehearing. This opinion issued subsequent to appellee's motion and in lieu of our original opinion covers and includes, along with the various other matters, our consideration of the trial court's findings deemed as basic or controlling in the disposition of this appeal and our determination that such findings cannot be sustained on the basis of the status of the evidential support. After considering all matters set out in appellee's motion for rehearing, we adhere to our former disposition of the case. Accordingly, appellee's motion for rehearing is overruled.