George V. GARCIA, et ux., Appellants,

v.

Mucia S. PALACIOS, et al., Appellees.

No. 04–82–00381–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 11, 1984.

Rehearing Denied Feb. 3, 1984.

C.M. Zaffirini, Zaffirini & Volpe, Laredo, for appellants.

Lawrence Mann, Mann, Dickinson & Saldana, Laredo, for appellees.

Before ESQUIVEL, REEVES and TIJERINA, JJ.

## OPINION

REEVES, Justice.

Appellants, Dr. and Mrs. George Garcia, defendants below, have perfected this appeal from an adverse judgment in a trespass to try title suit.

Suit was filed on February 20, 1980, by appellees, Mucia S. Palacios, Abraham G. Palacios, Angela P. Shipton, and Ricardo D. Palacios. Appellees alleged title to a tract of land containing approximately 59.88 acres, located in Webb County, Texas. Appellants answered not guilty and affirmatively plead title by limitations as a defense.

The facts leading to the filing of this lawsuit are as follows:

In 1926, the Antonio Salinas estate was partitioned. By virtue of this partition, Mucia S. Palacios, appellee, acquired title in fee simple to a tract of land known as Share No. 3, and her sister, Margarita S. Rubio, acquired title to a tract of land known as Share No. 4. Share No. 3 borders, and is located immediately north of, Share No. 4. At some point in time, shortly after the partition, a fence was constructed running in an east-west direction. It is undisputed that this fence was mistakenly considered the north-south boundary between Share No. 3 and Share No. 4. In fact, however, the fence was located ap-

proximately 360 varas north of the true boundary between the shares creating the disputed acreage of 59.88 acres.

On March 14, 1968, Margarita Rubio conveyed all of Share No. 4 to appellants. The deed described the property by a correct metes and bounds description and stated it was a conveyance of 948.35 acres. By January 1, 1969, the entire tract purchased by appellants, together with the disputed acreage, was entirely fenced. The disputed property consists of a rectangular strip of land containing 59.88 acres, being the northern most portion of appellant's fenced property, more particularly described as:

A tract of land, containing 59.88 acres, more or less, in Webb County, Texas, being part of B.S. & F. Survey 755, Abstract 886 and also being part of Share No. 3 as awarded to Mucia Salinas in Cause No. 7550, styled Minnie L. Salinas et al vs. Antonio L. Salinas et al, District Court of Webb County, Texas, certified copy of judgment of record in Volumne 99, Pages 562–8 of the Deed Records of Webb County, Texas; said tract being more particularly described as follows, to-wit:

BEGINNING at a ½″ steel rod on the east line of C. & M.R.R. Survey 1381, Abstract 981 and west line of Survey 755, said steel rod bears North 1357.5 varas from the common corner of Samuel Zamora Survey 326, S.M. & S. Survey 325, J.A. Rodriguez Survey 756, and said Survey 755 and said steel rod being the most northerly northwest corner of Share No. 4 awarded to Margarita Salinas in said Cause No. 7550, the most westerly southwest corner of Share No. 3 and the southwest corner of this tract;

THENCE North 358.54 varas with the east line of Survey 1381 and west line of Survey 755 and Share No. 3 to a ½″ steel rod, set in a fence corner the northwest corner of this tract;

THENCE N. 89° 17′ 26″ E. 938.88 varas with an existing fence to a ½″ steel rod set in a fence corner, the northeast corner of this tract;

THENCE S. 00° 39′ 00″ E. 360.07 varas along an existing fence to a ½″ steel rod set in fence on the north line of Share No. 4 and most westerly south line of Share No. 3 for the southeast corner of this tract;

THENCE S. 89° 23′ 07″ W. 942.94 varas with the north line of Share No. 4 and westerly south line of Share No. 3 to the place of beginning.

Appellants, in points of error five and seven, contend the trial court erred in entering judgment for appellees because appellants established title by limitations as a matter of law and there was no evidence to support the jury's unfavorable answers to the special issues on the ten year statute of limitations. TEX.REV.CIV.STAT.ANN. art. 5510 (Vernon 1958). We agree with appellants.

In viewing appellants' "matter of law" point, we must first determine if there in any evidence to support the jury's negative answers to the issues on adverse possession, as appellant had the burden of proof on these issues. *W.T. Carter & Bro. v. Holmes*, 131 Tex. 365, 113 S.W.2d 1225 (1938). If there is no evidence to support the jury's answers to the special issues complained of then we must examine all the evidence to determine whether title by limitations was established as a matter of law. *See Texas & New Orleans Railroad Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522 (1947); O'Connor, *Evidence Points on Appeal*, 37 TEX.B.J. 889 (1974); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

The issues on the ten year statute submitted to the jury, and the jury's answers were:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that the Defendants had continuous possession of the land in dispute not interrupted by adverse suit for ten years or more prior to the filing of this suit?

For the 4.37 acres?
answer "we do" or "we do not"

For the 55.51 acres?
answer "we do" or "we do not"

answer: <u>We do not</u>

answer: <u>We do not</u>

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the Defendants actually and visably appropriated the land in dispute for ten years or more prior to the filing of this suit?

For the 4.37 acres?
answer "we do" or "we do not"

For the 55.51 acres?
answer "we do" or "we do not"

answer: __We do not__     answer: __We do not__

## SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that such actual and visible appropriation commenced and continued with the intentions of claiming the land for themselves for ten years or more prior to the filing of this suit?

For the 4.37 acres?
answer "we do" or "we do not"

For the 55.51 acres?
answer "we do" or "we do not"

answer: __We do not__     answer: __We do not__

## SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the Defendants used the land in dispute for ten years or more prior to the filing of this suit?

For the 4.37 acres?
answer "we do" or "we do not"

For the 55.51 acres?
answer "we do" or "we do not"

answer: __We do__     answer: __We do__

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that the Defendants enjoyed the land for ten years or more prior to the filing of this suit?

For the 4.37 acres?
answer "we do" or "we do not"

For the 55.51 acres?
answer "we do" or "we do not"

answer: __We do__     answer: __We do__

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the Palacios Family were aware of the possession by the Defendants of the land in dispute for the period of ten years or more prior to the filing of this law suit?

For the 4.37 acres?
answer "we do" or "we do not"

For the 55.51 acres?
answer "we do" or "we do not"

answer: __We do not__     answer: __We do not__

At this point a review of the testimony and evidence at trial is helpful.

During appellees' case in chief, two witnesses were called. First was Ricardo Palacios, through whom a chain of title to all of Share No. 3 was established. C.V. Howland, Jr., a registered public surveyor, testified that he had surveyed the disputed acreage and it was located within Share No. 3. The survey by Mr. Howland was introduced into evidence. This survey shows the fence dividing Share No. 3 and No. 4 is not on the true boundary but is in fact located north of the actual boundary. Thus, appellees established record title to the disputed 59.88 acres.

Appellants' witnesses testified as follows:

Appellee, Abraham Palacios, Jr. was called as an adverse witness by appellants. He testified that he had always recognized the land south of the fence as Mrs. Rubio's property, and he had believed the fence was the boundary line. He further stated that he had shown the ranch to Dr. Garcia after Dr. Garcia expressed an interest in purchasing it, and upon consummation of the sale he received $1,000.00 as a commission. When Mr. Palacios showed the property to Dr. Garcia, he told the doctor, "The ranch begins here at this fence," indicating the north fence.

Dr. Garcia testified that he purchased the ranch from Mrs. Rubio on March 14, 1968. Within two weeks after closing, a gate with the initials G.G. was built in the north fence. Abraham Palacios testified he had driven Dr. Garcia's father out to the ranch and shown him where to put the gate. Dr. Garcia stated that after the gate was installed, it was then locked. None of the appellees had a key to the gate. The property purchased by Dr. Garcia had nine boundaries, all of which, with one exception, were fenced. Dr. Garcia had the one unfenced side (which did not adjoin the disputed north boundary) fenced in April of 1968. Thus, Dr. Garcia had, entirely under fence by May, 1968, the 948.35 acres which he had acquired by deed plus the disputed 59.88 acres.

At the time the ranch was purchased, it was occupied by Juan Salinas by virtue of a grazing lease which Mr. Salinas' had with Mrs. Rubio. The lease expired December 31, 1968, and Salinas was off the land by

then. Dr. Garcia stated he received a proportionate share of Salinas' rent for 1968 from Mrs. Rubio at closing.

Shortly after the purchase of the ranch, Dr. Garcia began constructing improvements on the disputed land. These included a two bedroom, one-bath concrete block house, a new well with a windmill, a concrete storage tank, a septic tank, steel corrals with gates and chutes for working cattle, water troughs, and a one-hundred-foot high radio tower. These improvements were eventually entirely surrounded by a fence. The total acreage of this enclosure is 4.37 acres, all of which is located on the disputed 59.88 acre tract.

Dr. Garcia further stated he cleared the entire disputed area of small brush, seeded it with buffel grass for grazing, built a road along the south side of the disputed fenceline, built senderos every one hundred feet, and after January 1, 1969, had a continuous cattle operation on the ranch until April, 1976. An employee of Dr. Garcia lived on the ranch in the improvements until April of 1976.

On April 4, 1976, Dr. Garcia ceased his use of the land as a ranch and leased the property to Ramon Flores for grazing. This lease described the property as "a ranch which used to belong to Mrs. Margarita Salinas Rubio which is located about 3½ miles southeast of Encinal, Texas." The lease further provided, "The ranch is leasing for $4.00 an acre which comes to be $5,000.00 total a year." This lease was extended annually until March of 1980. Flores had a continuous cattle operation on the ranch and he used everything south of the disputed fence.

During the time Dr. Garcia was using the ranch for his own cattle, he constructed cross fences which divided the ranch roughly into quarters. Dr. Garcia testified that after the fencing was complete, his cattle were rotated from quarter to quarter which would allow the grass to grow in the sections not being used. This resulted in the cattle grazing on the disputed tract only three months each year.

Appellees contend the following facts support the jury's answers to the special issues and thus the verdict. However, for the reasons detailed *infra*, we hold there is no evidence to support the verdict.

### A. *No Claim of Right*

■ (1) Appellees contend that since appellants knew at the time they purchased the ranch they were buying only 948 acres, that necessarily was the extent of their claim. However, in *Wilburn v. Abercrombie*, 125 S.W.2d 408, 410 (Tex.Civ.App.—Beaumont 1939, writ ref'd), the court stated, "It is immaterial that appellees testified that they claimed only the land described in [their] deed; they claimed, as their land, all the land within the boundaries pointed out to them...." Such is the case here.

■ (2) Appellees contend the fact that appellants failed to pay taxes on the disputed land is at least some evidence of a lack of intent to claim the land as their own. We disagree.

■ In *Davis v. Carriker*, 536 S.W.2d 246 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.), the following statement is found: "Although payment of taxes is not necessary to support ten year limitation title, failure to do so after the expiration of that period is significant evidence that no adverse claim is being made." *Id.* at 251. We think this statement is too strong. In *Davis*, the appellee had been awarded limitation title to a tract of land by the trial court. On appeal it was determined that there was no evidence to support the lower court's judgment since there was no proof of exclusive use and no acts or conduct on the part of the adverse possessor demonstrating an exclusive claim to the land. The only evidence of an intent to claim the land was a subjective intent on the part of the adverse possessor which was not communicated to the record title holder by any conduct of the possessor such as would put him on constructive notice. *Id.* at 251. We believe that, *standing alone*, the failure to pay taxes after limitations title has matured, amounts to less than a scintilla of evidence of no intent to claim the land.

The court in *Davis, supra,* relied on *Warren v. Fredericks,* 83 Tex. 380, 18 S.W. 750 (1892), as authority for its holding. In *Warren,* there was evidence that the adverse possessor bought only the improvements of a tract of land and occupied the land with permission of the record title holder.

■ When there is evidence that one occupies land by virtue of the record owner's consent, the failure of the possessor to pay taxes would reinforce the claim of occupancy by consent and tend to rebut a claim of adverse possession. In the case at bar, there is no evidence of occupancy by consent and therefore, appellant's failure to pay taxes is without probative force under our facts.

■ (3) Appellee further contends that the fact appellants executed an oil and gas lease which did not include the disputed tract is evidence of no intent to claim the land. At the time the lease was executed appellants had not yet acquired limitation title. Consequently, since appellant had neither record title nor ownership by adverse possession, they could hardly enter a lease for more than the 948 acres to which they held record title. We do not believe a lessee would pay delay rentals on land to which a lessor held no title. Thus the fact that the lease does not include the disputed land is no evidence supporting the verdict.

### B. *Exclusive Possession*

■ Appellees contend that because they had grazing and oil and gas leases which covered all of Share No. 3 in their descriptions of the leased land (therefore including the disputed acreage within the lease) that they had constructive possession of the 59.88 acres. Appellees reason that because of their constructive possession, appellants' possession could not be exclusive. This, however, is not the law. The doctrine of constructive possession does not apply to land in the adverse possession of another. *Chittim v. Auld,* 219 S.W.2d 702, 707 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.).

### C. *Continuous Possession*

■ Appellees contend appellants' possession of the disputed tract was not continuous because appellants rely on the possession of their tenant, Mr. Flores, to acquire the necessary ten years possession. Appellees state the general rule of law that a claimant can only claim through a tenant to the extent of his contract and cite us to *Weems v. Hawkins,* 278 S.W.2d 439 (Tex. Civ.App.—Amarillo 1954, writ ref'd n.r.e.).

While this is the general rule, there is an exception. In *King v. Inwood North Associates,* 563 S.W.2d 309 (Tex.Civ.App.— Houston [1st Dist.] 1978, no writ), the Houston court stated the exception as follows: "Where an understanding exists between the landlord and tenant that the tenant will hold certain premises under the lease arrangement, the tenant's occupancy of such premises will constitute the landlord's possession, even though such premises are not covered by the legal description in the written lease." *Id.* at 312; *see also Sanders v. Worthington,* 382 S.W.2d 910 (Tex.1964).

■ In the case at bar, the lease to Flores did not contain a legal description of the property. Mr. Flores stated he recognized Dr. Garcia as the owner of the disputed land. Mr. Flores had a continuous cattle operation on the ranch and used everything south of the misplaced fence. His possession inured to the benefit of Dr. Garcia and the lease is no evidence of a lack of continuous possession.

■ Having determined that there is no evidence to support the verdict, we must now determine whether appellants' established, as a matter of law, title to the 59.88 acres by limitations.

■ Adverse possession is defined as, "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." TEX.REV.CIV. STAT.ANN. art. 5515 (Vernon 1958). The possession must also be exclusive, visible, continuous, hostile and of such a character

as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925 (1948). Additionally, there must be cultivation, use, or enjoyment of the land for a period of ten (10) years. *McKee v. Stewart*, 139 Tex. 260, 162 S.W.2d 948 (Tex.1942); TEX.REV.CIV. STAT.ANN. art. 5510 (Vernon 1958). In *Harmon v. Overton Refining Co.*, 130 Tex. 365, 372, 109 S.W.2d 457, 460, *rev'd on other grounds on motion for rehearing*, 130 Tex. 365, 374, 110 S.W.2d 555 (1937), the law is stated as follows:

> It is well settled that when one enters into possession of land under a deed his possession is referable to the deed, and is presumed to be in conformity with it, and is confined to the limits thereof. Therefore, in order for a vendee to acquire title by adverse possession of additional or adjoining land outside the limits of the boundaries in his conveyance, he must have actual possession of such additional land of such character as of itself will give notice of an exclusive adverse possession....

This rule was reaffirmed in *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 785 (1954).

By January 1, 1969, the entire ranch was under fence. Appellees were entirely excluded from the land by virtue of the fence and locked gate. Appellants were in physical possession of the disputed land continuously from January 1, 1969 through March 7, 1980, first by their own occupancy and later, by virtue of their tenant, Flores. During the first seven and a half years, after the improvements were constructed, a ranch hand lived on the ranch, and cattle were grazed on the land. This was not merely casual grazing, or cattle occasionally straying onto another's property, but an actual ranch operation with its main headquarters located on the disputed property. Appellees had actual notice of this use of the land as illustrated by the testimony of appellee, Ricardo Palacios:

Q: [D]id you have occasion to see him building it [the improvements]?

A: Just casually. I didn't see him build them one at a time. On occasion I'd drive somewhere nearby and see that there was improvements there.

Q: Did you go tell Dr. Garcia that he was building on your property?

A: No.

Q: Or on your mother's property?

A: No, I did not.

Q: Why not?

A: Because I thought he was building on his property.

> \*     \*     \*     \*     \*     \*

Q: From 1968, when Dr. Garcia bought that property to the time you filed this lawsuit ... you believed that those improvements were on his property.

A: Yes, sir.

Q: And you believed that the property south of that dotted line [fence] was his property.

A: That's right.

> \*     \*     \*     \*     \*     \*

Q: [W]hy ... didn't you knock the fence down or file suit against Dr. Garcia immediately or go tell Dr. Garcia, "That's my land."

A: Because I didn't know where the boundary line was.

Q: You believed it was at the fence.

A: I believed that it was at the fence, but I never had occasion to recognize it or acknowledge it as the boundary.

"The owner of premises is presumed to know the true location of his boundaries and is bound to take notice of the nature and extent of possession by a claimant." *Wilson v. Seigel*, 167 S.W. 1090, 1091 (Tex.Civ.App.—Amarillo 1914, no writ); *Sanders v. Moore*, 157 S.W. 441, 443 (Tex.Civ.App.—Fort Worth 1913, writ ref'd). The jury found that the Palacios family was not aware of the appellants' possession of the land in dispute for ten years or more prior to the filing of suit. There is simply no evidence to support this

finding. The Palacios family knew of appellants' possession of the land. What they did not know was that the land was theirs.

We hold that appellants have established, as a matter of law, title to the disputed acreage under the ten year statute. TEX.REV.CIV.STAT.ANN. art. 5510 (Vernon 1958).

Accordingly, we render judgment that appellants have legal title by limitations to the above described property.

Because of the disposition of appellants' points of error five and seven, neither appellants' remaining points nor appellees' cross points need be addressed.

TIJERINA, Justice, dissenting.

I respectfully dissent from the majority's findings of 'no evidence' to support the jury's negative answers to the issues on adverse possession. On the contrary the record reflects an abundance of probative evidence which effectively contradicts appellant's claim of adverse possession.

The established rule in this regard requires that the party seeking limitation title under TEX.REV.CIV.STAT.ANN. art. 5510 (Vernon 1958) must affirmatively show, by clear and satisfactory proof, the following: (1) peaceful and continuous possession, use and enjoyment of the disputed land for the statutory period; (2) the possession must be adverse or hostile to the rights of the record owner; and (3) there must be an exclusive domination over the property and appropration of it for his own use and benefit. *Karell v. West,* 616 S.W.2d 692, 695 (Tex.Civ.App.—Fort Worth), *writ ref'd n.r.e. per curiam,* 628 S.W.2d 48 (Tex.1981); *Radford v. Garza,* 586 S.W.2d 656, 660 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Rocha v. Campos,* 574 S.W.2d 233, 235 (Tex.Civ.App.—Corpus Chrsti 1978, no writ). In the instant case, the jury's findings to the special issues, on the question of adverse possession of the disputed land, were against appellant. Apparently, the trial court did not agree that the evidence conclusively established appellant's claim of adverse possession but found the question to be sufficiently disputed to submit special issues requiring the jury to determine the fact questions. Adverse possession is usually considered a fact issue to be determined by the jury, however, when the facts are undisputed, the trial court will determine the question of limitation title as question of law. *See Plumb v. Stuessy,* 603 S.W.2d 351, 355 (Tex.Civ.App.—Austin 1980), *rev'd on other grounds,* 617 S.W.2d 667 (Tex.1981); *Frederick v. Chaney,* 589 S.W.2d 856, 859 (Tex.Civ.App.—Fort Worth 1979, no writ). As a general rule, a fact finder has implied finding power and can make a reasonable inference from the direct or circumstantial probative evidence. *See Harrison v. Harrison,* 597 S.W.2d 477 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.).

Our review of this record clearly shows the conflicting nature of the testimony which gave issue to the fact questions, involving limitations title, submitted to the jury. Appellant testified that as a result of a survey he found out he had enclosed by fence more land than he had purchased—but—concealed this information. Appellant never told appellees, nor did he have an express or implied agreement, as to the use of the disputed land. He used the disputed land for grazing cattle occasionally—but—admitted the disputed land was not used most of the time. Appellant sold all his livestock in 1976 terminating any claim of actual or continuous possession. Thereafter he leased to Ramon Flores only the 948.35 acres purchased from appellees.

## THE EVIDENCE

1. Defendant's exhibit No. 3 admitted into evidence was the grazing lease from appellant to Ramon Flores on April 6, 1976. Appellant charged rent for 1200 acres, but later upon complaint of tenant and by agreement reduced the rent to correspond to the 948.35 acre tract. Flores testified he never asserted adverse or open hostile claim to appellees. His testimony, *even if conflicting,* could have been considered by the jury in its implied findings and infer-

ences in support of its verdict. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273, 276 (1958). (Emphasis added). The jury was correct that there was no continuous adverse possession for the statutory period.

2. Plaintiff's exhibit 14 admitted into evidence was the oil and gas lease executed by appellant on March 7, 1972. Appellant leased "all of Share No. 4 containing 948.35 acres. The jury could have considered this evidence as a basis for its implied finding, reasonable inferences and deductions. *Harrison v. Harrison, supra.* The jury was correct that appellants did not actually and visibly appropriate the land in dispute for ten years.

3. Plaintiff's exhibit 23 admitted in evidence is a rental receipt showing a delay rental on the oil and gas lease paid to appellant on January 2, 1979 for the tract of land described as 948.35 acres in Share No. 4 of the Antonio Salinas Estate.

4. Plaintiff's exhibit 15 admitted in evidence was a deed of trust executed by appellant on April 21, 1979, as security for the payment of a promissory note to Union National Bank. The security given was on the 948.35 acres tract.

5. Dr. Garcia testified that he only paid taxes on the 948.35 acres which he purchased from appellees. He admitted that he did not pay taxes on the 59.88 acres of land which he claimed by adverse possession. "The payment of taxes is not necessary to support ten year limitation title, however, *the failure to pay taxes will be considered as probative evidence that an adverse claim was not made.*" (Emphasis added.) *See Davis v. Carriker,* 536 S.W.2d 246, 251 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). This was a factor which the jury could have considered in its finding that appellant was not in continuous possession or actually and visibly appropriated the land in dispute for the ten year period.

The majority relies heavily on the testimony of Abraham Palacios, Jr. *which the jury in its prerogative chose to disregard. Royal v. Cameron,* 382 S.W.2d 335, 339 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r. e.). (Emphasis added). The jury further

disregarded all of the conflicting and contrary testimony.

The majority is of the opinion that the witness Abraham Palacios, Jr., one of the appellees, judicially admitted that the fence that divided their land from appellant's lands was the true boundary line that had existed for the ten year period. I do not agree. In Texas, the term "judicial admission" has been defined as a "waiver of proof" during the course of a judicial proceeding. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224 (Tex.Civ. App.—San Antonio 1951, writ ref'd). The rule by which a party's recovery in a lawsuit is barred by his own testimonial declarations is one of public policy, that being, it would be as absurd as it manifestly would be unjust to allow a party to recover after he has clearly and unequivocally sworn himself out of court. *Carr,* 242 S.W.2d at 229. The five rules set forth by then Associate Justice Norvell in the *Carr* case must apply before a party's testimony is conclusive against him. *Griffin v. Superior Insurance Co.,* 161 Tex. 195, 338 S.W.2d 415, 419 (1960). It is incumbent upon appellant to satisfy these five following requirements:

(1) That the declaration relied upon was made during the court of a judicial proceeding;

(2) That the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony;

(3) That the statement is deliberate, clear and unequivocal. The hypothesis of mere mistake or slip of the tongue must be eliminated. If the statement merely contradicts some other portion of the party's testimony, conclusive effect cannot be given thereto, but a fact issue is presented for the determination of the jury;

(4) That the giving of the conclusive effect to the declaration will be consistent with the public policy upon which the rule is based; and

(5) That the statement is not also destructive of the opposing party's theory of recovery. In other words, the declaration must be one relating to a fact upon which a judgment in favor of the opposing party may be based.

Abraham G. Palacios, appellee, made the declarations during the course of the proceedings in the instant case; satisfying the first requirement. The statements were contrary to an essential fact embraced in appellee's suit to try trespass to title because the witness admitted to the belief that the fence was the true boundary line; satisfying the second requirement. The witness' statements, however, were not deliberate, clear and unequivocal; first, the statements were of a matter held as an opinion or belief, second, such belief was mistaken, and finally, the *statements were contradicted by other testimony of Abraham G. Palacios.* To give conclusive effect to these statements would not be consistent with public policy because Mr. Palacios was not unequivocally swearing himself out of court. Finally, although the declaration relates to a fact upon which a judgment in favor of appellant may be based, it does not establish the admitted element as a matter of law. Testimony of parties to a suit must be regarded as evidence, not as facts admitted. *Carr,* 242 S.W.2d at 228. In the instant case the declarations were to be given whatever weight the trier of fact, the jury, resolved. Here the resolution was in favor of the appellees. Appellants failed to satisfy the mandatory requirements of the *Carr* case. I therefore reiterate that the jury apparently chose to disregard this testimony.

Appellant contends and the majority agrees that the evidence conclusively established the adverse possession of the disputed land and further that there was no evidence to support the jury's findings to the special issues 1, 2, 3, 6 and 16.

In deciding appellants' "conclusive" contentions, we must review the whole record to ascertain if the probative evidence establishes as a matter of law the asserted proposition. In this connection the probative evidence must be sufficient to convince reasonable minds that there is no material fact issue concerning the asserted proposition. But, however, where there is probative evidence contrary to the asserted proposition, the matter must be resolved by the fact finders. *Shop Rite Foods, Inc. v. Upjohn Co.,* 619 S.W.2d 574, 578 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). The majority ignores the established Texas rules in this regard. The question of whether appellant's claimed use of the disputed land *was such as to give notice of exclusive, hostile and adverse possession was a question of fact* to be determined by the jury. *Lundelius v. Thompson,* 461 S.W.2d 153 (Tex.Civ.App.—Austin 1970, writ ref'd n.r.e.). (Emphasis added.) The jury correctly found the issue unfavorable to appellant.

It was the jury's exclusive prerogative, as the trier of fact, to judge the credibility of the witnesses and the weight to be given their testimony, to resolve conflicts in the testimony of witnesses, to believe part of a witness testimony or disregard it. *Royal v. Cameron, supra; Diaz v. Cantu,* 586 S.W.2d 576, 580 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). An appellate court cannot substitute its judgment for that of the jury, even though after reviewing the evidence it may have reached a different conclusion from that of the trier of fact. *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

On the assignment that there was no evidence to support the jury's findings, the reviewing court considers only the evidence favorable to the verdict and judgment and must sustain the verdict and judgment if there is evidence of probative force to support it. *Freeman v. Texas Compensation Insurance Co.,* 603 S.W.2d 186, 191 (Tex. 1980). *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The whole record has been reviewed and there is more than sufficient evidence to support the jury's findings and verdict. Accordingly, I would affirm the judgment of the trial court.