# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

═══════════════
## NO. 03-05-00274-CV
═══════════════


**Patricia Bush, Appellant**

**v.**

**Fayette County, Texas, Appellee**


══════════════════════════════════════════════════════════════════════
### FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
### NO. 2001V-215, HONORABLE HENRY J. STRAUSS, JUDGE PRESIDING
══════════════════════════════════════════════════════════════════════


## M E M O R A N D U M   O P I N I O N


In this suit between a landowner and a county regarding the characterization of a section of road in the county as public or private, appellant Patricia Bush contends that the district court erred by granting summary judgment in favor of appellee Fayette County and determining that the road was public. For the reasons set forth below, we affirm the district court's judgment granting summary judgment in favor of the County.


### FACTUAL AND PROCEDURAL BACKGROUND

At issue is an approximately .6 mile portion of St. James Church Road in Fayette County that begins at its intersection with Old Lockhart Road and extends southward until it ends at a cattle guard. The road has been in existence at least since 1937. It appeared on a 1965 highway map prepared by the State Department of Highways and Public Transportation, and on the county's

1972 and 1987 compilations of its roads. The .6 mile portion at issue was omitted from a 1991 compilation.

Use of the road by the public dates back to at least 1937. In addition, since at least the 1970s, the County has maintained the .6 mile portion by blading the gravel road and trimming brush and trees from the fences running along both sides of the road.

In early 2002, a newly constructed locked gate appeared on St. James Church Road just south of its intersection with Old Lockhart Road, blocking access to the .6 mile section at issue. Subsequently, the County filed suit seeking a declaration that the road is a public road, and an injunction ordering Bush and her husband, Irvin Davis, to remove the obstruction.[1]

Both the County and Bush filed motions for summary judgment. In its motion, the County contended that the .6 mile portion became a public road through an implied dedication, or, alternatively, through prescription, and that the County had adduced proof entitling it to a judgment as a matter of law based on both theories. Bush contended that as a matter of law the County was unable to prove elements required for it to prevail on either of its theories. The district court granted the County's motion for summary judgment and denied all relief to Bush.

**ANALYSIS**

In this appeal, we must address whether the trial court erred in granting the County's summary judgment. The County relied on two theories in its motion for summary judgment: (1)

---

[1] The County's lawsuit was consolidated with a third party petition Bush had filed against the County as part of a separate lawsuit in which Bush and the County were the only remaining parties.

implied dedication to public use, and (2) easement by prescription. Because our determination regarding implied dedication is dispositive, we need not reach the prescriptive easement issue.

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999). When reviewing a motion for summary judgment filed pursuant to rule 166a(c), we take the nonmovant's evidence as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in favor of the nonmovant. *See Nixon*, 690 S.W.2d at 548-49.

Common-law dedications may be express or implied. Implied dedications, such as the one at issue here, are based on the unequivocal acts and conduct of the landowner. *See O'Connor v. Gragg*, 339 S.W.2d 878, 882 (Tex. 1960). The parties agree that this dispute implicates chapter 281 of the transportation code, which abolished the common law doctrine of implied dedication in counties with populations of less than 50,000. *See* Tex. Transp. Code Ann. § 281.003(b) (West 1999) ("An oral dedication or intent to dedicate by overt act is not sufficient to establish a public interest in a private road under this chapter."). The statute, however, does not apply retroactively and, therefore, does not affect an implied dedication occurring before its effective date of August 31, 1981. *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985); *Las Vegas Pecan &*

3

*Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984). Thus, in determining whether an implied dedication occurred, we look only to actions occurring prior to August 31, 1981.

The elements of implied dedication are: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication. *Lindner*, 691 S.W.2d at 592; *Zavala County*, 682 S.W.2d at 256. We will discuss each of these elements.

Bush asserts that the County's summary judgment evidence failed to prove as a matter of law that the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use. Generally, in order to meet this element, a party must show a "clear, unequivocal act or declaration by the owner of his intention to set the roadway apart for the public use." *O'Connor*, 339 S.W.2d at 882; *Oswald v. Grenet*, 22 Tex. 94, 99 (1858). However, an important corollary to this rule is that when the origin of the use by the public, and the ownership of the land at that time, are "shrouded in obscurity," and no proof can be adduced to show the intention of the owner in allowing the use, the law raises a presumption that the requisite intention and acts disclosing it were present. *O'Connor*, 339 S.W.2d at 882; *Dunn v. Deussen*, 268 S.W.2d 266, 269 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.). As this Court has previously stated, this corollary is designed to meet a particular anomaly—evidence of long-continued use by the public. *Barstow v. State*, 742 S.W.2d 495, 507 (Tex. App.—Austin 1987, writ denied). Bush argues that

4

the evidence presented does not constitute a long and continuous use, and, therefore, the presumption should not apply.[2] We disagree.

In his affidavit, attached as supporting evidence to the county's motion, Henry Reiss, who was born and raised in Fayette County and later retired there, averred that he was familiar with the portion of road at issue, and that "[t]hat part has been there for as long as I can remember, and has always been open to use and travel by the public." In addition, Reiss recounted two specific instances in which he had traveled on the road in 1937 and 1939, and averred that he rode horseback on that section of the road many times in the 1940s. He concluded that based on his observations he always had considered the road public:

> During all the times that I have used that part of St. James Church Road that is the subject of this Affidavit, that part was free, unobstructed and open for travel and use. I never saw any gates, fences or obstructions of any kind across that part of the road. I have never seen any signs on that part of road saying it was a private road. As far as I am concerned, from what I can recollect, I assumed that part of St. James Church Road was a public road.

The County also produced the affidavit of Jesse Schielack, whose in-laws, the Niemeyers, have owned property contiguous to the road since 1938, and who based on his observations concluded the road was public:

> During the approximately 55 years that I have been familiar with and have used that portion of St. James Church Road, it has always been open and available to anyone that wanted to use that road, until recently when some person or persons placed wooden fencing and a locked gate across it to block and obstruct that portion of the

---

[2] Although Bush references statements in her deposition that the road was closed for a period of time, that testimony is not part of the record on appeal.

5

road at a place just south of Old Lockhart Road. Prior to that, over all the approximately 55 years, I as well as others used that road whenever desired. I never asked permission from anyone to use the road. I have always considered that portion of St. James Church Road to be a public road. The gate and fencing which now obstructs that portion of the road prevents me and others from using the entire Niemeyer tract, and I want the gate and fencing removed so that the property can once more be used as it always had been. Although I did not see the fence and gate being built, from my conversations with Mr. [Irvin] Davis, I know that he wanted that part of St. James Church Road closed and that he built or had that fence and gate built across that portion of St. James Church Road.

The affidavits supplied by the County sufficiently demonstrated the appropriateness of applying the presumption. *See, e.g.*, *Spinuzzi v. Town of Corinth*, 665 S.W.2d 530, 532 (Tex. App.—Fort Worth 1983, no writ) (finding presumption was raised by summary judgment evidence showing public use for at least fifty years). While a presumption does not result in shifting the burden of proof, it does shift the burden of producing or going forward with the evidence to the party against whom it operates. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). In the context of a summary judgment, this principle requires Bush as the nonmovant to produce evidence creating a genuine issue of material fact to challenge this element.

Bush presented no evidence to rebut the presumption. She did not assert that the origin of the road or the owner at that time were known, nor did she contradict any of the affidavit statements regarding use. *See Spinuzzi*, 665 S.W.2d at 532-33 (finding fact issue created by opposing affidavits that contradicted claims of public use and county maintenance). Therefore, because the County established through its proof that the presumption applied, and Bush did not offer evidence to the contrary, we find that the County satisfied the first element of implied dedication.

The requirement that the landowner be competent to make a dedication has been interpreted to mean that the owner held fee simple title to the property. *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 839 n.10 (Tex. App.—San Antonio 1997, no writ). In its motion for summary judgment, the County stated that the same presumption discussed above should apply to this requirement. This result follows logically from the premise of the presumption. We find the analysis of our Texarkana sister court in the case of *Betts v. Reed* instructive. 165 S.W.3d 862 (Tex. App.—Texarkana 2005, no pet.) (mem. op.). In *Betts*, a landowner closed a road that had been used by the public since at least the 1920s. *Id.* at 866. The court determined that if the obscurity shrouding the origin of the road also shrouds the identity and intent of the original owner or owners, then the obscurity also shrouds any assessment of any previous owner's competency. *Id.* at 870 n.4. The facts in *Betts* are similar to those here, in which Bush, the landowner, closed the road after use by the public since 1937. Due to the presumption, we find the County has proved this element.

Although it is undisputed that there has been use of the road by the public and that there has been some maintenance of the road by the County, Bush further contends that the quantity of public use and county maintenance was not sufficient to prove as a matter of law that the public relied on the acts of the landowner and will be served by the dedication.

Evidence of long, continued, unquestioned use of a road supports a finding that the public relied on an implied dedication of the road. *Supak v. Zboril*, 56 S.W.3d 785, 791 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Graff v. Whittle*, 947 S.W.2d 629, 638 (Tex. App.—Texarkana 1997, writ denied). A road's characterization as public does not depend upon its length, nor upon the places to which it leads, nor upon the number of persons who actually travel

7

upon it. *Gutierrez*, 951 S.W.2d at 841. So long as it is free and open to all who have occasion to use it, it is a public road. *Id.*

The County adduced proof showing public use dating to at least 1937. Reiss traveled the road with a teacher and a couple of boyhood friends in 1937, and in 1939 he traveled the road with his father. He also traveled it many times on horseback in the 1940s. Reiss averred that the road had been fenced off from the neighboring properties for as long as he could remember. Schielack had used the road since the late 1940s, and from 1954 to the present he and others used it many times to access and work on his in-laws' property. In addition, he averred that he had seen many persons other than his relatives, friends, and family members using the road. He also averred that he had seen deer hunters, oil company vehicles, and the County's maintenance workers using the road. Both Reiss and Schielack averred that they had always assumed the road was public, and that they never asked permission to use the road.

In addition to showing use by the public, the County also showed that it had performed some maintenance of the road, with at least one instance occurring prior to 1981. In his affidavit, James Wiedemann, a County employee, averred that he had hauled gravel and dumped it on the road in the first half of the 1970s and that he "considered that part of St. James Church Road to be a public road." In the affidavit of William Gross, a county commissioner who took office on January 1, 1981 and whose precinct included the road at issue until 1992, Gross averred that his employees bladed the gravel road as needed to maintain drainage, and cut brush and trees from the fence lines every three to four years. Furthermore, Schielack averred that he was aware of maintenance by the County:

8

I have often seen Fayette County equipment working that part of St. James Church Road South of Old Lockhart Road. I have seen County maintainers going up and down that part of the Road blading it and spreading the road material. I know my mother-in-law once called the Fayette County Commissioner that was over the Precinct that the Niemeyer tract is in, to have him install a drain pipe, or rework the drain pipe. . . . Soon thereafter the drain pipe was installed. I knew I could call the Commissioner anytime I believed the road needed grading or blading, as I considered it to be a public, County road.

The evidence demonstrates that there have been sufficient indications of the public nature of the road on which the public could rely. There is fencing along both sides of the road, there was at least one instance of county maintenance prior to 1981, and there has been long and continuous use by the public. *See*, *e.g.*, *Owens*, 251 S.W.2d at 959 (evidence showed roadway was segregated from land by fencing, landowner and others knew of county maintenance, and public used the road prior to the landowner obstructing the road). In addition, the road appeared on a 1965 state highway map, and on 1972 and 1987 compilations of Fayette County roads.[3]

While it is not clear that all of the use and maintenance described by the affidavits occurred prior to 1981, the evidence does show that prior to 1981 the public and the County relied on the road's public appearance. Any use occurring subsequent to 1981 supports the County's position that the public has been and continues to be served by the dedication. Schielack's averment that the gate and fencing obstructing access to the road prevents him and others from accessing his in-laws' entire tract establishes that the public is and will be served by the dedication. We therefore

---

[3] The omission of the road from the 1991 county road compilation does not signify abandonment of the dedication. Abandonment occurs when the use for which the property is dedicated becomes impossible of execution or the object of the use wholly fails. *Adams v. Rowles*, 228 S.W.2d 849, 852 (Tex. 1950). The only evidence in the record indicates that the omission was a mistake or oversight.

conclude that the County proved as a matter of law that the public relied on and will be served by the public nature of the road. Bush challenges the amount of public use and county maintenance, but does not otherwise challenge the evidence supplied by the County, and, therefore, does not raise a fact issue.

Acceptance does not require a formal or express act; implied acceptance is sufficient. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978). All that is required is a general and customary use by the public. *Gutierrez*, 951 S.W.2d at 839 n.12; *Davis v. Carriker*, 536 S.W.2d 246, 252 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.). The County's evidence of public use discussed above establishes acceptance of the public dedication of the road.

## CONCLUSION

Because the County adduced sufficient evidence on each element of implied dedication to demonstrate its entitlement to summary judgment, and in light of the absence of evidence demonstrating that a genuine issue of material fact exists, we overrule Bush's issues and affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed: April 13, 2006

10