ACCEPTED
03-14-00707-CR
5683130
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/15/2015 4:18:27 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00707-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF
TEXAS AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/15/2015 4:18:27 PM
JEFFREY D. KYLE
Clerk

********

# DEVIN DESEAN SIMMONS

## VS.

# THE STATE OF TEXAS

********

ON APPEAL FROM THE 264th DISTRICT COURT
OF BELL COUNTY, TEXAS
Cause No. 71988

******

# STATE'S BRIEF

******

**HENRY GARZA**
DISTRICT ATTORNEY

**BOB D. ODOM**
ASSISTANT DISTRICT ATTORNEY
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

*Oral Argument Not Requested*

1

# TABLE OF CONTENTS

**ITEM**                                                                                      **PAGE**

Index of Authorities ........................................................................ 4

Statement Regarding Oral Argument ........................................................ 7

Statement of the Case ...................................................................... 7

Statement of Facts ........................................................................ 8

Summary of State's Argument .............................................................. 13

Argument and Authorities ................................................................. 14

    First Issue .......................................................................... 14

        PLEAS TO ENHANCEMENTS INVOLUNTARY
        AS NOT KNOWINGLY ENTERED?

        Facts ............................................................................ 15

        Analysis and Application ........................................................ 16

        Harm ............................................................................ 17

    Second Issue ........................................................................ 19

        EVIDENCE SUFFICIENT TO PROVE PRIOR
        CONVICTIONS FINAL?

        Facts ............................................................................ 20

        Analysis and Application ........................................................ 21

    Third Issue .......................................................................... 24

        PUNISHMENT CRUEL AND UNUSUAL AS
        DISPROPORTIONATE TO THE CRIME?

Preservation of Error ......................................................... 25

Analysis and Application ..................................................... 25

Fourth Issue ...................................................................... 28

TRIAL COURT ERR IN ALLOWING CO-
DEFENDANT TO ASSERT PRIVILEGE
AGAINST SELF-INCRIMINATION?

Facts ............................................................................... 29

Preservation of Error ......................................................... 31

Analysis and Application ..................................................... 33

Prayer .................................................................................... 39

Certificate of Compliance with Rule 9 .............................................. 39

Certificate of Service ................................................................... 40

# INDEX OF AUTHORITIES

**CASES**                                                                  **PAGE**

*Burnett v. State*, 88 S.W.3d 633 ............................................... 19
    (Tx. Cr. App. 2002)

*Castaneda v. State*, 135 S.W. 3d 719 ................................... 25
    (Tx. App. Dallas 5th Dist. 2003, no pet.)

*Chennault v. State*, 667 S.W. 2d 229 ............................... 31, 34
    (Tx. App. Dallas 5th Dist. 1984, rev. ref.)

*Davis v. State*, 501 S.W. 2d 629 ......................................... 34
    (Tx. Cr. App. 1973)

*Davison v. State*, 405 S.W. 3d 682 ............................... 18-19
    (Tx. Cr. App. 2013)

*Ellis v. State*, 683 S.W.2d 379 ........................................... 32
    (Tx. Cr. App. 1984)

*German v. State*, No. 03-03-00180-CR, 2003 Tex. ........................... 33-34
    App. LEXIS 7908 (Tx. App. Austin 3rd Dist. 2003 no
    pet.), not designated for publication

*Gilmore v. State*, No. 03-10-00740-CR, 2011 Tex. ........................... 25
    App. LEXIS 6518 (Tx. App. Austin 3rd Dist. 2011 no
    pet.), not designated for publication

*Grayson v. State*, 684 S.W. 2d 691 ...............................33, 35-36
    (Tx. Cr. App. 1984)

*Harmelin v. Michigan*, 501 U.S. 957 (1991) ...................... 25

*Harvey v. State*, 611 S.W. 2d 108 ...................................... 17, 21
    (Tx. Cr. App. 1981)

*Holland v. State*, 802 S.W.2d 696 ........................................................ 32
    (Tx. Cr. App. 1991)

*Howard v. State*, 429 S.W. 2d 155 ....................................................23-24
    (Tx. Cr. App. 1968)

*Lopez v. State*, No. 03-06-00086-CR, 2008 Tex. ............................... 25
    App. LEXIS 9700 (Tx. App. Austin 3rd Dist. 2008
    rev. ref.), not designated for publication

*Malloy v. Hogan*, 378 U.S. 1 (1964) ...................................................... 36

*Mitchell v. State*, 238 S.W.3d 405 ........................................................ 32
    (Tx. App. Houston 1st Dist. 2006 rev. ref.)

*Moore v. State*, 54 S.W.3d 529 ............................................................. 26
    (Tx. App. Ft. Worth 2nd Dist. 2001 rev. ref)

*Nabors v. State*, No. 12-00-00371-CR, 2002 Tex. ............................. 23
    App. LEXIS 4506 (Tx. App. Tyler 12th Dist. 2002, rev.
    ref.), not designated for publication

*Ex Parte Rich*, 194 S.W.3d 508............................................................ 21
    (Tx. Cr. App. 2006)

*Samuel v. State*, 477 S.W.2d 611 ......................................................... 25
    (Tx. Cr. App. 1972)

*Taylor v. State*, No. 03-14-00300-CR .................................................. 34
    (Tx. App 3rd Dist), pending

## **OTHER**

*United States Constitution*

    Fifth Amendment ................................................................. 28-38

*Texas Penal Code*

> Section 12.32 ............................................................ 26

> Section 12.35(a) ...................................................... 21

> Section 12.42(d) .............................................. 7, 21, 26

> Section 29.03............................................................ 26

*Texas Code of Criminal Procedure*

> Article 1.15 .............................................................. 24

> Article 26.13(a)(1) ................................................. 16

*Texas Rules of Evidence*

> Rule 801(d) .............................................................. 37

> Rule 802 .................................................................. 37

*Texas Rules of Appellate Procedure*

> Rule 33.1 .................................................................. 31

> Rule 44.2(b) ............................................................ 18

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

## STATEMENT OF THE CASE

The Appellant, Devin Desean Simmons, was charged by indictment with the offense of Aggravated Robbery, individually and as a party with Gini Lee Taylor. The indictment alleged that, while in the course of committing theft of property, and with intent to maintain control of that property, he intentionally, knowingly, or recklessly caused bodily injury to Robert Patrick by shooting him with a firearm, a deadly weapon. (CR-5).

The indictment also contained two additional paragraphs alleging that the Appellant had been twice before finally convicted of felony offenses for the purposes of enhancement of sentence as provided in Section 12.42(d) of the *Texas Penal Code*.

The Appellant was tried before a jury in the 264th District Court of Bell County, Texas, Judge Martha J. Trudo presiding, upon his plea of not guilty (RR4-6). He was found guilty by the jury. (CR-99; RR5-94).

Upon the Appellant's election (CR-86) the trial court, without a jury, considered the issue of punishment. The Appellant entered pleas

7

of true to the second and third paragraphs of the indictment alleging the prior felony convictions. (RR5-96, 97; RR6-6). At the conclusion of the evidence on sentencing the trial court found the enhancement allegations in the indictment to be true and assessed punishment at 45 years in the Texas Department of Criminal Justice Institutional Division. (RR6-46).

The Appellant gave timely notice of appeal (CR-113, 122) and the trial court certified his right to do so. (CR-115).

## STATEMENT OF FACTS

Retired Army CWO2 Robert Patrick went to a strip club where he met one of the dancers, Gini Lee Taylor, who introduced herself to him by her professional name of "Candy". (RR4-15, 16, 19, 20). Candy asked him if he was ready to spend some money and danced for him and received a tip. (RR4-20). She struck up a conversation with Patrick and told him that she was not making any money that night and mentioned her children. (RR4-21).

Patrick left, but returned to the club parking lot at closing time hoping to take another dancer to breakfast. Instead he again met Candy, who asked for a ride home. (RR4-21, 22). She went back inside and

8

Patrick noticed a white or gray Chrysler sitting in the parking lot with its motor running. When Candy came back out she stopped by the Chrysler and then ran to his car and got in. (RR4-22, 23).

As they drove, Candy started talking about needing to make some money and said that she needed $200.00. He told her that he had no money. (RR4-23). Candy then asked him if he had a weapon in the car, and, when he asked why she needed to know that, she claimed she had a felony and would be in trouble if they got stopped. (RR4-23, 24).

She also asked him to stop at a convenience store for cigarettes. He left her in the car with his cell phone because she said she needed to call and make sure she could get into her apartment. He went inside and got the cigarettes and an additional $100.00. (RR4-24).

When they arrived at her apartment, Patrick noticed that her front door was ajar. He also noticed that a car was sitting in the parking lot that looked just like the one at the club. (RR4-24, 25).

Candy went inside and Patrick was just ready to pull out of the parking lot when he realized she still had his cell phone. He left his money in his car (RR4-52) and went inside. She told him his phone was on the couch as she walked out of his sight toward the back of the residence. (RR4-26, 27).

9

Candy came back and said "come on, let's go" but he repeated that he had no money. She asked him to come with her because she had something to show him. (RR4-27).

As Mr. Patrick approached the threshold of the bedroom the Appellant came out with a pistol in his hand and told him that he might be going to die. The Appellant then hit Patrick in the head with the pistol, stunning him and drawing blood. (RR4-28). The Appellant said "you thought you were going to fuck tonight, but you are going to die". (RR4-29).

The Appellant demanded that Patrick take everything out of his pockets and he did so. He had $68.00 on his person. They had him throw his wallet, keys, cell phone and money on the floor and asked him where the rest of it was. He said that he had no more, but the Appellant accused him of having it in his car and said they were going to get it. (RR4-30).

As Mr. Patrick stepped from the room, the Appellant fired a shot with the weapon and Patrick grabbed his hand and they began to struggle for the weapon. (RR4-31). During the struggle, the Appellant screamed at Candy to "hit the fucker". (RR4-31). She hit him with something and dazed him, but he did not let go of the Appellant's arm.

Candy then took the gun from the Appellant's hand. (RR4-31). The Appellant repeatedly yelled to her to put the gun to Patrick's head so that she would not miss (RR4-32). Patrick stopped the struggle and raised his hands. They had him sit on the couch. (RR4-32).

The Appellant said that they were going to be done now and that he was going outside to get the "chopper", which Patrick took to be another weapon of some kind. The Appellant told Candy to keep the gun close to Patrick's head. (RR4-32).

Realizing it was his last chance, when the Appellant went outside Mr. Patrick ran toward the bed room. Candy shot him; however, he made it into the room and locked the door. (RR4-32, 52). He went to the window but was unable to open it so he broke it and managed to crawl out, cutting himself on the glass. (RR4-32). He crawled into some shrubbery to hide and later managed to crawl to a nearby residence for help. (RR4-33, 34).

Robert Patrick was taken to the hospital where he was found to have a shattered hip bone from the gunshot that required repeated reconstructive surgeries as well as a deep wound to his right arm from the glass. He also had to have staples to close the head wound suffered from the first blow. (RR4-34).

When the Harker Heights Police first went to the scene, believing it to be a domestic disturbance, they saw Gini Lee "Candy" Taylor parking the automobile belonging to Robert Patrick. Candy and the Appellant then got into the Chrysler and left. (RR4-60, 61, 62, 64).

Officers subsequently served a search warrant on the apartment and found a spent shell casing, a bullet hole in the wall of the back bedroom, a bullet in the bathroom where it had gone through the wall, and blood on the kitchen counter, bedroom door and wall, on the venetian blinds, and noticed a broken window in the bedroom. They also found a quantity of ammunition of the same caliber as the spent shell. (RR5-9, 10). The bullet that struck Patrick was lodged in his body. (RR5-16).

At trial the Appellant testified and claimed that he had returned home to find Patrick in a compromising positon with his wife, Ginni Lee Taylor, and they had fought. He said that Patrick had pulled the gun and it went off during the fight (RR5-39, 40, 41). He denied pistol whipping or hitting Patrick and said that when Candy picked up the gun he told her not to shoot him but she did when he took off. (RR5-43, 44). He said the live ammunition of the same caliber as that used to shoot the victim that was found in the house belonged to his wife. (RR5-62).

## SUMMARY OF STATE'S ARGUMENT

The trial court was not required to admonish the Appellant prior to accepting his pleas of true to the enhancement allegations in the indictment, however, the court did so twice and the Appellant assured the court that his pleas were freely and voluntarily entered and that he was pleading true because that which was alleged in the indictment was true. The record clearly shows that the Appellant was fully aware of the effect of the enhancements on the range of punishment in that the trial court so advised him. He failed to object or raise the issue before the court.

The Appellant's pleas of true relieve the State of its burden to prove that the prior convictions alleged were final convictions. The indictment so alleged and the Appellant admitted the truth of those allegations. The Appellant testified that the prior convictions occurred in the sequence alleged in the indictment.

The punishment assessed was well within the statutory range as enhanced. The Appellant did not object or question the sentence when it was assessed and nothing is presented for review. The sentence, in the middle of the statutory range, was not disproportionate to the very

violent and premeditated crime and in light of the fact that this was the Appellant's third felony conviction.

The Appellant called the co-defendant outside the presence of the jury fully aware that she would assert her privilege against self-incrimination. She consistently invoked the privilege. The Appellant did not object nor request that the trial court compel her to testify nor did he contest her right to do so. Her case was pending appeal and, thus, not final and she still was entitled to the privilege. Nothing is presented for review. Her single answer of "yes" when asked if she had sent letters to the Appellant did not implicate her in the offense and could not have had any confusing effect upon the jury as fact finder because the jury never heard it. Nothing in the record remotely indicates that she should have known she was waiving her rights by simply admitting the sending of letters.

## ARGUMENT AND AUTHORITIES

### *First Issue on Appeal*

Were the Appellant's pleas of "true" to the enhancement allegations of the indictment involuntary because they were not knowingly and intelligently entered?

*Facts*

Based upon the Appellant's election to have his punishment assessed by the trial court (CR-86), after the jury had returned its verdict of guilty the trial court received his pleas to the allegations in the second and third paragraphs of the indictment alleging two prior final felony convictions in proper sequence for enhancement of the sentence to 25 years to life.

After the prosecutor read each of those two paragraphs the Appellant pled true to those allegations. (RR5-96, 97). Upon those pleas the following occurred:

> "THE COURT: Are you pleading true to each of these paragraphs freely and voluntarily?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Has anybody made any promises to you, forced you, threatened you, or intimidated you in any way to get you to plead true?
>
> THE DEFENDANT: No.
>
> THE COURT: You are pleading true, Mr. Simmons, because you were previously convicted as alleged and for no other reason; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you of sound mind and mentally competent to make such a plea today?

THE DEFENDANT: Yes.

THE COURT: And do you agree with his plea of true and that he is mentally competent Mr. White?

MR. WHITE (Appellant's trial counsel): I do, Your Honor.

THE COURT: I'll accept the defendant's pleas of true to paragraph 2 and 3." (RR5-97, 98)

The court then ordered a presentence report and recessed the hearing. (RR5-98).

When the sentencing hearing reconvened more than two months later the trial court noted that it could not remember if it had taken the Appellant's pleas to the enhancement paragraphs and, once again, the Appellant entered pleas of true to each of the paragraphs and affirmed that he was doing so freely and voluntarily and that those pleas were not the result of force, threats, or intimidation. (RR6-6).

### Analysis and Application

The Appellant's complaint boils down to his contention that the trial court did not admonish him at the time of his pleas to the enhancement paragraphs as to the range of punishment and he cites Article 26.13(a)(1) of the *Texas Code of Criminal Procedure* as his authority.

16

That article sets out a number of admonishments required of the trial court before accepting a plea of guilty or *nolo contendere.* The article, however, is not applicable to pleas of "guilty" or "true" to enhancement allegations in an indictment. *Harvey v. State,* 611 S.W.2d 108, 112 (Tx. Cr. App. 1981).[1]

The Appellant twice assured the trial court that he was pleading "true" to the enhancement allegations in the indictment uninfluenced by any pressure of any kind to do so. He also stated that he was entering those pleas because he had been convicted as alleged. Apparently the court was not obligated to, but is to be commended for, the efforts it made to assure the voluntariness of the pleas. It certainly did not err in accepting the pleas.

### *Harm*

Even had the trial court erred in failing to admonish the Appellant of the effect of the enhancement paragraphs upon the range of punishment when it accepted the pleas of guilty, the Appellant has failed to show that he was harmed.

---

[1] "Of course, admonishing an accused who pleads "true" to the consequences thereof is to be commended but the Legislature has not seen fit to require a trial court to admonish an accused who enters a plea of "guilty" or "true" to an alleged prior conviction or convictions and we find no requirement in law demanding this occur". *Harvey* at 112.

17

Rule 44.2(b), *Texas Rules of Appellate Procedure,* requires that any non-constitutional error that does not affect substantial rights be disregarded. In assaying harm under that rule from a failure to admonish the reviewing court must look to the record *as a whole,* to determine whether the defendant was aware of the particular information upon which he should have been admonished. Only a completely silent record supports an inference that the defendant was unaware. *Davison v. State,* 405 S.W.3d 682, 687-88 (Tx. Cr. App. 2013).

In this case, the record as a whole clearly establishes that the Appellant was fully aware of the effect of the enhancement allegations upon the range of punishment. At a pretrial proceeding four days prior to the commencement of trial, the court told the Appellant:

> "Now, you have a second and third paragraph which
> allege prior convictions in 2009 and 2011. If you're found
> guilty of the offense as a party with the aggravated robbery
> and those two paragraphs are true, that enhances your
> punishment range from a minimum of 25 years up to life
> in the penitentiary with a fine of up to $10,000.00, court
> costs, and any restitution, jointly and severally, with the
> other co-defendant. So you understand the punishment
> range for this offense?"

The Appellant replied "Yes, ma'am." (RR2-5).

Another factor the reviewing court may consider is the complete failure of the Appellant to complain or raise an issue as to the range of

18

punishment at any time, including when his sentence was assessed. It would have been reasonable to expect him to express some surprise or to protest his punishment had he been unaware of the range applicable due to the enhancements. His nonchalance is a factor that infers his awareness of the range of punishment. *Davison* at 688-89. See also *Burnett v. State*, 88 S.W.3d 633, 64042 (Tx. Cr. App. 2002).

The indictment contained two paragraphs alleging prior convictions and placing the Appellant on notice that the State intended to use them to enhance the range of punishment. The trial court expressly told the Appellant that, if they were found to be true, the range of punishment for his offense would rise to 25 years to life in prison. The Appellant never protested nor claimed that he did not understand what the court had clearly told him was the effect of the enhancements. Even if the trial court had been required to so admonish him; the record as a whole shows that he was aware of those consequences and of the enhanced range of punishment. There were no substantial right affected and the error was harmless.

## Second Issue on Appeal

Was the evidence insufficient to prove that the previous convictions alleged in the indictment were final convictions?

*Facts*

Paragraphs II and III of the indictment read as follows:

II.

And it is further presented in and to said court that prior to the commission of the offense alleged in paragraph I on the 12th day of December, A.D. 2009 in Cause Number 62,334 in the 27th District Court of Bell County, Texas the Defendant was convicted of the felony offense of Burglary of a Habitation.

III.

And it is further presented in and to said court that prior to the commission of the offense alleged in Paragraph II and after the conviction in Cause Number 62,334 was final, the defendant committed the felony offense of Possession of a Firearm by a Felon and was convicted on the 29th day of November A.D., 2011 in Cause Number 68,529 in the 426th District Court of Bell County, Texas.
(CR-5)

After the verdict of guilty, these paragraphs were read to the Appellant by counsel for the State at the behest of the trial court. The Appellant then responded as to each paragraph that it was true. (RR5-96, 97). He reiterated that plea at his sentencing hearing. (RR6-6).

During the Appellant's testimony at the guilt or innocence phase of the trial his counsel asked him if he had been in trouble before and the Appellant stated that he had been to prison twice; once for burglary of a habitation and once for possession of a firearm. (RR5-37). In

20

response, on cross examination, the State asked the Appellant when he got out of prison for his first conviction and he replied in 2010. (RR5-48). The Appellant also stated that after he had finished serving his sentence for the burglary of a habitation and was released he was convicted and received a two year sentence for felon in possession of a firearm. (RR5-48, 49).

### Analysis and Application

When the accused enters pleas of "true" to enhancement allegations in the indictment he removes the burden from the State to prove that the alleged prior convictions were final. He cannot enter a plea of true and then be heard to complain that the evidence is insufficient to support that plea. *Harvey* at 111. The only exception to that general rule is where the enhancement allegations themselves are improper. *Ex Parte Rich*, 194 S.W.3d 508, 513 (Tx. Cr. App. 2006).

In this case the Appellant entered pleas of true to the allegations to the two enhancement paragraphs. Section 12.42(d) of the Penal Code provides that if it is shown on the trial of any felony offense other than a State Jail Felony punishable under Section 12.35(a), that the defendant has been previously finally convicted of two felony offenses, and that the second previous felony conviction was for an offense that occurred

21

subsequent to the first previous felony offense having become final, then the range of punishment is 25 years to life in prison. The indictment in this case precisely pled that the Appellant had been so previously convicted and was proper under the State in order to invoke its provisions.

The Appellant pled "true" to each of the allegations in the enhancement paragraphs after those paragraphs had been read to him. The enhancements were not improper and his pleas alleviated the State's burden to prove that he was finally convicted as alleged. Having admitted the truth of those paragraphs he cannot now turn and challenge the evidence to fulfill a burden that he waived.

Furthermore, it must be remembered that in his testimony and initially under questioning by his own counsel, he admitted the alleged prior convictions and then, on cross examination, acknowledged that he committed and was convicted of the felony offense alleged in paragraph II and served his time and then, after his release, he committed the offense giving rise to the second prior felony offense contained in paragraph III. Not only did he admit the truth of the allegations by his pleas, he also did so in his testimony.

The Appellant attempts to distinguish his plea from those cases holding that a plea alone is sufficient by noting that in *Nabors v. State*, No. 12-00-00371-CR, 2002 Tex. App. LEXIS 4506 (Tx. App. Tyler 12th Dist. 2002 rev. ref.), not designated for publication, the defendant stated that he was pleading guilty because he was guilty and for no other reason, whereas in this case the Appellant confirmed that he was pleading true because he was "...previously convicted as alleged and for no other reason." (RR5-97).

This is a distinction without a difference. The Appellant does not offer an explanation as to how pleading true because it is true differs in pleading true because what was alleged was correct is different. While the trial court and the Appellant did not use the words "is true" they nonetheless established that he was pleading true because everything alleged happened just as it was pled.

The Appellant's reliance upon *Howard v. State*, 429 S.W.2d 155 (Tx. Cr. App. 1968) is also misplaced. In *Howard* the defendant was convicted by a jury and the trial court assessed punishment. In the court's judgment the enhancement allegations were found to be true, however, the only thing in the record to support that finding was a notation on the docket sheet that the defendant had stipulated that he

23

was the same person convicted as alleged. There was no stipulation contained in the record. There is no mention of a plea to the enhancements in the case. Article 1.15 of the Code of Criminal Procedure requires an agreement to stipulate be in writing and approved by the trial court. Because there was nothing in the record to support the finding of true the judgment was reformed to delete references to the enhancement. *Howard* has no application to this case where the Appellant entered pleas of true to the enhancement allegations on the record and testified as to the matters contained in the indictment.

The Appellant having entered pleas of true to the proper allegations of previous convictions contained in the indictment, he had relieved the State of its burden to prove those allegations and cannot now complain that it has not done so.

## *Third Issue on Appeal*

Did the sentence of 45 years in the penitentiary constitute cruel and unusual punishment because it was disproportionate to the offense committed?

### Preservation of Error

The Appellant did not object to the sentence at the time it was assessed nor did he raise the issue by a post-conviction motion. In order to preserve alleged error based upon excessive or disproportionate punishment, the defendant must have made a timely request, motion or objection in the trial court. When he fails to do so nothing is presented for review. *Lopez v. State*, No. 03-06-00086-CR, 2008 Tex. App. LEXIS 9700 (Tx. App. Austin 3rd Dist. 2008 rev. ref.), not designated for publication, citing *Castaneda v. State*, 135 S.W.3d 719, 723 (Tx. App. Dallas 5th Dist. 2003 no pet.). See also *Gilmore v. State*, No. 03-10-00740-CR, 2011 Tex. App. LEXIS 6518 (Tx. App. Austin 3rd Dist. 2011 no pet.), not designated for publication. The Appellant has failed to preserve this issue for review.

### Analysis and Application

The length of a sentence in a criminal case is purely a legislative prerogative. *Harmelin v. Michigan*, 501 U.S. 957, 962 (1991). Where the punishment falls within the limits prescribed by a valid statute it is not *per se* excessive, cruel, or unusual within the constitutional prohibition. *Samuel v. State*, 477 S.W.2d 611, 614 (Tx. Cr. App. 1972).

Where the Appellant contends that his sentence is cruel and unusual punishment because it is disproportionate to the crime committed, the reviewing court must compare the gravity of the offense against the harshness of the sentence in order to determine whether or not the sentence is grossly disproportionate to the offense. *Moore v. State*, 54. S.W. 3d 529, 542 (Tx. App. Ft. Worth 2nd Dist. 2001, rev. ref.).

Section 29.03 of the *Texas Penal Code* provides that aggravated robbery as charged against the Appellant is a first degree felony. A first degree felony is ordinarily punished by life or a term of years not more than 99 and not less than 5. Section 12.32, *Texas Penal Code*. Where, however, the defendant has been previously convicted of two felony offense and the second prior conviction was for an offense committed after the first prior conviction was final, the range of punishment is life or a term of not more than 99 years or less than 25 years. Section 12.42(d) of the Penal Code.

Therefore, the Appellant's 45 year sentence is within the range of punishment prescribed by the Legislature for both the primary offense itself and as enhanced by his prior convictions. It is not, therefore, cruel, unusual, or excessive *per se*.

Nor is it grossly disproportionate to the gravity of the offense. There was evidence from which the jury could have reasonably found that the aggravated robbery was premeditated and carefully planned. That evidence includes the co-defendant's conversation with the victim about needing money; the fact that she spoke to someone in a car waiting in the parking lot before going with the victim and what was apparently the same car waiting at her apartment; her inquires of the victim intending to determine if he was armed; her request to stop at the convenience store so that she could be left with the phone; and her insistence that the victim come into the apartment and the bedroom where the Appellant was waiting with his firearm.

The offense was one of great violence that resulted in very serious and long lasting injuries from the gun shot and blows to the head suffered by Mr. Patrick. The Appellant now attempts to place all of the blame for that violence on his wife, Gini Lee Taylor, but conveniently forgets the evidence showing that he fired the first shot when Patrick moved to leave the room and then he struck Patrick on the head with the weapon, telling him that he might be going to die. He also ignores the fact that he called to his wife to hit Patrick as they struggled for the gun and she did so. He also told her to get the pistol and after she did to

put it close to the victim's head so that she could not miss. Then, when he went to get the "chopper" to be done with it, Patrick ran and Taylor shot him in the hip. His allegation that "his co-conspirator acted willingly and independently and was the sole cause of the most serious injuries...." (Appellant's Brief at 19) requires that all of the evidence be ignored but his own self-serving testimony. Clearly the jury and the trial court chose not to do so.

The gravity of this offense was great. The evidence supports a conclusion that it was a premeditated offense that lead to great violence inflicted upon Robert Patrick by both co-defendants in the course of robbing him. Mr. Patrick was severely injured. Because of the Appellant's record of two successive felony convictions, this case became his third felony conviction. The range of punishment was thus 25 years to 99 years or life. The sentence of 45 years, therefore, is actually in the middle of the statutory range provided by the legislature. It is not disproportionate to the crime and it is not cruel and unusual punishment.

### Fourth Issue on Appeal

Did the trial court err in allowing the co-defendant to invoke her Fifth Amendment right against self-incrimination?

*Facts*

During the guilt/innocence phase of the trial and after the State had rested, the Appellant called his co-defendant, Gini Lee Taylor, as a witness. This occurred entirely outside the presence of the jury. Taylor's counsel was present to advise her. (RR5-29-31). The following occurred:

"BY MR. WHITE (counsel for Appellant)

Q. Ma'am, what is your name?

A. Gini Taylor.

Q. And Ms. Taylor, are you currently in the Bell County jail?

A. Yes, sir.

.........

Q. And how long have you been at the Bell County jail?

A. Eight months.

Q. And it's my understanding that you were involved in an aggravated robbery charge?

A. No. I choose to use my Fifth Amendment and not testify.

Q. And so the answer is not, no, you weren't involved, but, no, you're invoking your right to your Fifth Amendment?

A. Yes, sir.

Q. You're choosing to remain silent?

A. Yes, sir.

Q. So if I ask you any questions in regards to the offense or any facts, circumstances surrounding the offense, it is your intention to invoke your Fifth Amendment, right?

A. Yes, sir.

Q. Would it be futile on my part and a waste of time if I ask you any question, would you just insist on invoking Fifth Amendment, right?

A. Yes, sir.

Q. So if I ask you, in fact, who shot Robert Patrick, what would your answer be?

A. I don't have an answer for that.

Q. And that would be because why?

A. Because I chose not to testify." (RR5-29, 30).

The State had no questions of the witness, however, the court asked the

Appellant if he had anything else to ask:

Q. (By Mr. White):  Ms. Taylor, have you written letters to my client since?

A. Yes, sir.

Q. And in those letters, did you discuss certain things with him in regards to what your testimony would be?

A. I choose not to talk about any of that, sir.

Q. And so you haven't included any letters, in fact, that you acted on your own and that it was not any direction or command or anything by my client, by Devin"

A. I choose not to speak on that.

MR. WHITE: That's all I have, Your Honor." (RR5-31).

Later, during the Appellant's own testimony, he attempted to relate to the jury what his wife had said about disposing of the gun in one of her letters and the trial court sustained the State's objection on the grounds of hearsay. (RR5-45).

### Preservation of Error

In order to preserve error a party must make a timely objection on specific grounds and obtain a ruling from the trial court. Rule 33.1, *Texas Rules of Appellate Procedure*. Absent such an objection the error is waived. Where there was no objection as to the propriety of the invocation of a witness' privilege against self-incrimination under the Fifth Amendment, nor a demand that she testify, that issue was waived and could not be argued on appeal. *Chennault v. State*, 667 S.W.2d 229, 302 (Tx. App. Dallas 5th Dist. 1984 rev. ref.).

In this case the Appellant called his co-defendant, who invoked her Fifth Amendment privilege. He did not contest her right to do so

31

and did not request a ruling from the trial court concerning her invocation of that right. In fact he acknowledged her intention and right to invoke the privilege from the outset. At the close of the hearing his only request was to call her in front of the jury to have her invoke her privilege. The trial court denied that request.[2] (RR5-29-32).

Having failed to make a specific and timely objection to the witness's invocation of the Fifth Amendment privilege or even calling for a ruling upon it validity by the trial court, nothing is presented for review.

It also must be noted that in his brief the Appellant attempts to blend an alleged violation of his Sixth Amendment right to confront the witnesses against him into this ground of error. There was no objection voiced to the trial court on any such violation. A defendant waives his right to confront witnesses if he does not object at trial. *Mitchell v. State*, 238 S.W.3d 405, 408 (Tx. App. Houston 1st Dist. 2006 rev. ref.), citing *Holland v. State*, 802 S.W.2d 696, 700 (Tx. Cr. App. 1991).

---

[2] The assertion of the privilege cannot be the source of any inference by the jury either favorable or unfavorable to the prosecution or the accused and it is not error for the trial court to refuse a motion to require a witness to invoke the privilege before the jury. *Ellis v. State*, 683 S.W.2d 379, 382-83 (Tx.Cr.App. 1984).

### Analysis and Application

The Fifth Amendment to the *United States Constitution* provides that a person may not be compelled to give testimony that tends to incriminate them. A witness cannot be compelled to answer unless it is perfectly clear from a careful consideration of the circumstances that the witness is mistaken in asserting the privilege and that the answer cannot possibly tend to incriminate the witness. *Grayson v. State*, 684 S.W.2d 691, 696 (Tx. Cr. App. 1984); *German v. State*, No. 03-03-00108-CR, 2003 Tex. App. LEXIS 7908 (Tx. App. Austin 3rd Dist. 2003 no pet.), not designated for publication.

In this case Gini Lee Taylor was not called by the State, but by the Appellant outside the presence of the jury. As soon as counsel for the Appellant inquired about her involvement in the offense Ms. Taylor immediately invoked her Fifth Amendment privilege against self-incrimination and she continued to do so in response to every question involving the offense. (RR5-29-32). The Appellant asked a number of questions clearly establishing that she would continue to invoke that privilege and that he was aware that she would do so from the outset.

Ms. Taylor confirmed that her case was on appeal and that her attorney was present in court, that she had consulted him, and was

33

following his advice. When a witness invokes the Fifth Amendment privilege on the advice of counsel no further inquiry by the trial court in allowing that invocation is required. *Chennault* at 302; *German*, supra.

There was no question, however, that the witness' belief that answering the Appellant's questions about whether she was involved in the robbery; shot the victim; and did so without his participation would tend to incriminate her was well founded. The protection against compelled self-incrimination is not lost until the proceedings against the witness have been finally terminated. Where the case against the witness is on appeal that case has not been prosecuted to a final conclusion and the witness may continue to assert the privilege. *Davis v. State*, 501 S.W.2d 629, 630-31 (Tx. Cr. App. 1973). Gini Lee Taylor's conviction as a party to the offense on trial was then on appeal[3] and she had every right to assert the Fifth Amendment privilege not to incriminate herself.

The Appellant claims, however, that Ms. Taylor waived her privilege by answering a single question. He claims that her answer was materially incriminating and, therefore, she can no longer decline to answer other questions, but must make full disclosure on the subject.

---

[3] See Gini Lee Taylor v. State, Cause No. 03-14-00300-CR in this court.

34

The question propounded to her was "Ms. Taylor, have you written letters to my client since?" and her answer was "yes". (RR5-31). Then when he followed up by asking her about the contents of those letters she again asserted the privilege.

In the first place, it is extremely difficult to see how the question as to whether she had written letters to the Appellant and her answer of "yes" was materially incriminating to her. In the second, a waiver of the privilege should be inferred from a witness' prior statements only if: (1) the answer to the prior question has created a significant likelihood that the fact finder will be left with, and prone to rely upon, a distorted view of the truth; and (2) the witness had reason to know her answer would be interpreted as a waiver of the Fifth Amendment privilege. *Grayson* at 695.

Just as in *Grayson*, in this case the answer given by the witness was outside the presence of the jury and, therefore, there was no chance whatsoever that it would create a significant likelihood that the jury, the fact finder, would be left with a distorted view of the truth. *Grayson* at 695.

Moreover, the record does not support any conclusion that Ms. Taylor had reason to know that her bare admission that she had sent

35

the Appellant letters would be interpreted as a waiver of her privilege. She invoked the Fifth Amendment privilege both before, and immediately after the answer when the question turned to the offense of which she had been convicted and concerning which an appeal was then pending. In determining whether the witness really apprehends the danger in answering a question, the court cannot be skeptical and must remain acutely aware that incrimination in criminal case may be achieved in obscure and unlikely inquiries. *Grayson* at 696, citing *Malloy v. Hogan,* 378 U. S. 1, 13 (1964).

It also must be noted that the whole theory of waiver of the privilege by answering the question confirming that she had sent letters has been raised for the first time on appeal and was not argued to the trial court.

The Appellant called Ms. Taylor outside the presence of the jury and firmly and repeatedly established that she was asserting her Fifth Amendment privilege against self-incrimination concerning the offense on trial. He never requested that the trial court rule that she had improperly asserted the privilege or to instruct her to testify and there was no ruling by the court on that question. The only thing the Appellant requested of the trial court was that he be allowed to call her

in front of the jury and have her assert the privilege in its presence. That request was properly denied.

The Appellant has failed to preserve the issue and nothing is presented for review. If, however, the Appellant has moved the court to deny her the privilege and had the court refused it would not have erred.

Attempting to show harm by the failure of the court to compel Taylor's testimony on its own motion, the Appellant somehow ties this to his attempt to testify that he did not know what happened to the gun but that Ms. Taylor told him in a letter that she took it. The State objected to the testimony as hearsay and the trial court sustained the objection. (RR5-45). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Rule 801(d), *Texas Rules of Evidence.* Rule 802 provides that hearsay is not admissible. The Appellant offers no explanation as to why his testimony as to what Gini Taylor said in a letter would not be inadmissible hearsay. Neither does he contend that his attempt to tell the jury that Taylor said she got the gun was for anything other than the truth of the matter asserted. He does not cite any authority as to how Ms. Taylor's assertion of her Fifth

Amendment privilege concerning her letters would allow him to testify to what she had said in them over a hearsay objection.

Finally, he also states that it is likely that he would have been acquitted had the trial court, without a request that it do so, had denied Gini Lee Taylor her Fifth Amendment rights and compelled her testimony. This is purest speculation. He did not proffer the letters in question for the record, assuming that he actually had them. Nothing in the record indicates what those letters would have contained or what Ms. Taylor may have said in them. His questions may imply that she took responsibility for the crime, but that again is speculation. In any event, the Appellant's testimony concerning the offense consisted entirely of his assertion that his wife planned and executed the offense all on her own without his participation. The jury clearly rejected that and it is not unlikely that had Ms. Taylor attempted to "take the rap" the jury would still have rendered the same verdict based upon Robert Patrick's testimony clearly establishing active involvement by both co-defendants.

## PRAYER

The State of Texas respectfully prays that the judgment of conviction herein be, in all things, be affirmed.

Respectfully Submitted,

HENRY GARZA
District Attorney

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney
P.O. Box 540
Belton, Tx 76513
(254) 933-5215
FAX (254) 933-5704
DistrictAttorney@co.bell.tx.us
SBA No. 15200000

## CERTIFICATE OF COMPLIANCE WITH RULE 9

This is to certify that the State's Brief is in compliance with Rule 9 of the *Texas Rules of Appellate Procedure* and that portion which must be included under Rule 9.4(i)(1) contains 6, 504 words.

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this brief has been served upon, Robert L. Sirianni, Jr. , Counsel for Appellant, by electronic transfer via Email, addressed to him at Robert@brownstonelaw.com on this 15th day of June, 2015.

/s/ *Bob D. Odom*

BOB D. ODOM
Assistant District Attorney